By the Court,
Monell, J.
A court of equity has power to give relief, where there has been a mistake or omission in a written agreement, and» may, in an appropriate action, conform the agreement to the intent of the parties. In such cases, parol evidence of the agreement, or intent of the parties, is admissible, to prove that by mistake something material has been omitted, or that it contains more than was intended, or that it varies from their intent by expressing something different in substance from the truth of that intent. These cases are pehaps the only exception to the general rule that parol evidence is inadmissible to vary or explain a written instrument. (2 Phil. Ev. 566.) The justice was right therefore in admitting the evidence objected to by the defendant, and his exception thereto is not well taken.
*509 Although the power of -a court of equity to give relief in these cases is unquestionable, yet such power is exercised with great caution, and unless the mistake is clearly made out by proof entirely satisfactory, the court will withhold relief, upon the ground that the written paper ought to.be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy. (Gillespie v. Moon, 2 John. Ch. 585. Lyman v. United Ins. Co., Id. 630. Marquis of Townshend v. Stangroom, 6 Ves. Jr. 328.) The language of these cases is, that it requires the most demonstrative proof, especially against the answer denying the mistake. And thevidence must be rejected, unless it is free from doubt, and clearly preponderates. Lord Thurlow, in one case, (Lady Shelburne v. Lord Inchiquin, 1 Bro. C. C. 338,) saying, "it must be irrefragible evidence.” And Mr. Justice Story, in his Commentary on Equity Jurisprudence, saying that relief will not be afforded, “ whenever the evidence is loose, equivocal, or contradictory, or it is in its texture open to doubt or to opposing presumptions.” (1 Story’s Eq. § 157.)
The taxes contemplated by the agreement in this case, were the state, county and city tax for the year 1863, meaning the calendar year from January 1, 1863, to December 31, 1863. These taxes were confirmed and became a lien upon the land on the twenty-third of September, 1863. Upon the lot in question they amounted to $283.15. The dispute between the parties is, whether it was the agreement and intention of the parties, that the plaintiff was to pay-the proportion of that sum, which the period of time between the twenty-third of September and the first day of November (one month and eight days) bore to twelve months, and the defendant the balance; or whether the defendant was to pay the proportion which the period of time between November 1, 1863, and January 1, 1864, (two months,) bore to the whole of the year 1863.
The written contract of sale and purchase was made on the first day of July, 1863. By its terms, the deed was to be delivered and possession given on the first day of November, 1863; and the premises were to be conveyed free of all incum *510 Prances “ except the party of the second part to pay proportion of the taxes for the year 1863, from. November 1, 1863.” The plain construction of this clause,, (in view of the fact that the taxes to be paid were then imposed for the year 1863, without reference to the time of confirmation,) is, that the defendant was to pay the proportion of one-sixth of the amount; being the proportion which the period of time from November 1, 1863, to the end of that year would bear to the whole of the year 1863. And unless the evidence is clear, distinct and preponderating, that the written agreement does not,express the meaning or intention of the parties, the latter must prevail.
The only reliable evidence on the part of the plaintiff is the testimony of Hr. McDermott, the attorney who drew the contract. He testified that he was present at the plaintiff’s house at the time the contract was drawn and executed; that the parties and himself only were present; that he asked the defendant when he would be ready to close the matter; he (defendant) stated that he resided in New Jersey, and that he wished to close the matter on the first of November. The witness says he told the plaintiff there would be a difficulty about that, as the taxes would be confirmed in September and become a lien upon the property ; that if the defendant wished the closing of the matter delayed until November, he must pay the taxes which would be confirmed in September. “He asked me how the taxes were payable. I told him they were confirmed every September, and that when paid the- property ivovld be free from taxes until the following September. After the contract was drawn, he said it was not fair that he should pay the taxes from September until November, as she (plaintiff) would occupy the house during that period. She said she was willing to pay the proportion of the taxes for that time.” The witness said he then interlined the words “the party of the second part to pay proportion of taxes for year 1863, from November 1st, 1863.”
Upon his cross-examination, the witness testified that at the time of making the contract the word “1864” was not used by any one; nor was any thing said on the subject of *511 who was to pay the taxes for the year 1863, from January 1, 1863, to November 1, 1863. That he supposed the taxes of 1863, being paid, relieved the property until September, 1864; that he supposed the taxes were from September, 1863, to September, 1864, and that what he stated to the defendant was based upon relief from lien.
The,plaintiff's evidence is chiefly,a version of what she understood the agreement about the taxes to be. She says, however, that the defendant said he would pay all the taxes except from September to November. But Mr. McDermott testified to no such declaration or agreement.
It does not appear any where in the evidence that the defendant understood the agreement to be as testified to by Mr. McDermott, of that he assented to it. Mr. McDermott did not say to him that he was to pay the taxes from January 1, 1863, and apart from the defendant’s testimony, it is evident that he did not so understand it, and that he never agreed to pay them. He undoubtedly supposed that the taxes were for the twelve months next succeedirig the confirmation; else why did he object to paying from September to November, when the plaintiff would occupy the bouse. Had he understood it, he could have objected with as much and even more force to paying from January to September when the plaintiff had the house in her possession.
It seems to me quite clear that.there was no mutuality; that the defendant did not understand the agreement to be different from what was reduced to writing, and never assented to any other. I do not attach any importance to what took place at the time the deed was delivered. If the defendant made any admission or promise then, it was with reference to his previous understanding that the tax year commenced in September, instead of in January. If the case rested on the plaintiff’s evidence alone, it would not, in my opinion, be sufficient to sustain this action; but the defendant not only by his answer under oath, but by his oral .testimony at the trial, denies that any other agreement was made, than such as is contained in the written contract. He says that at the inter *512 view spoken of by Mr. McDermott, Mr. McD. said “you have no objection to pay your proportion of the taxes. You know they are payable in advance.” To which I replied “ I know nothing about taxes, never having bought property before, but that I was willing to pay proportion of taxes from November, 1863, at which time the property was to be transferred to .me.” Upon the whole of the evidence,-the action fails within the principle of the cases that the allegation of mistake must be supported by proof entirely satisfactory. No doubt Mr. Mc-Dermott understood the agreement as he has testified, but the difficulty is, that he does, not undertake to say that the defendant so understood it, or assented to it. At any rate, the case is not free from doubt, which it must be, before the court should give relief. ' *
After a careful reading of the evidence, I have not been able to find it sufficient to sustain the finding of the justice. It entirely falls short of satisfying me that the défendant (whatever may have been the understanding of the plaintiff and her attorney) agreed at any time to pay more than the proportion from November 1 to January 1. There was therefore no mutual mistake. And a' mistake on one side does not authorize the interference of the court. The equity is wholly with the defendant; for it seems to be unconscionable to compel him, without the clearest proof of his agreement, to -pay the taxes from January to July, for six months before be made his contract ; and from July to November when the plaintiff had the use and occupancy of the house.
I think the judgment should be reversed, and a new trial granted with costs to abide the event.
Robertson, Ch. J. It is hardly necessary to quote the provisions of the statutes of this state in reference to the collection of taxes, in order to establish that the fiscal corresponds with the calendar year. (See 1 R. S. 5th ed. pp. 954 to 977.) The special provisions were cited on the trial, and are to be found in the case. Of course no part of the year 1864 forms any-part of the time for which the taxes for 1863 are assessed. The *513 confirmation of an assessment for taxes creates a lien on land, and renders them collectable, but has nothing else to do with the period for which they are assessed. Taxes áre not collectable in advance ; and although paying taxes for any one year may leave the land free from the lien of a tax until the confirmation of the next year’s tax, that does not make the taxes for a specified year, a tax for the period between the two confirmations which is rarely if ever an exact year. Assuming, therefore, that the parties before executing the contracts of purchase and sale in question, had made an agreement to be embodied therein and only omitted therefrom by accident and mistake, a clause to the effect that the defendant should pay the “ balance” of the taxes for 1863, to be confirmed and become a lien on the land in September, after deducting therefrom the proportion thereof from such confirmation until the first of November following, the plaintiff would be entitled to no relief; since such balance is explained by the words, “ the proportion thereof from that date (November 1st) until the confirmation of the annual taxes in September, 1864,” because such period formed no part of the fiscal year 1863, for which such taxes were levied.
The decision in this case finds as a fact an agreement between the parties, that the plaintiff would pay such a proportion of the taxes, which should be confirmed'in the month of September, 1863, as the time between the date of such confirmation to the first of November, 1863, would bear to the period of a year, and that the residue of such taxes the defendant should pay. It also finds as a fact that the attorney who drew up the contract omitted by mistake to express such contract; what kind of mistake is not stated ; from what it originated or how it occurred. I think the testimony of such attorney clearly shows that what was inserted in the contract, which is inconsistent with such agreement, was so done deliberately and if unintentionally, only under a mistaken idea of the law by suck attorney, who acted for the plaintiff alone. The contract was originally drawn exempting all the taxes for 1863 from the stipulation against incumbrances, and at the suggestion of the de *514 fendant and by the assent of the plaintiff it was altered to its present form solely because the defendant objected to paying taxes for the time the house was occupied by the plaintiff. Such attorney testifies that he never considered whether “ taxes confirmed in 1868, related back to the first of January of that year,” and that he supposed that the taxes for 1863 were for the time between September 1863 and September 1864. He also subsequently informed the defendants’ attorney to the same effect, and directed the defendants’ attention to the written contract. In his letter demanding payment he also reiterated the language of the contract by saying: “ You agreed to pay the proportion of the taxes from November 1st,” underscoring the word “from.” There-is not a particle .of evidence of a word being said by the defendant, or in his presence by others, of his assuming any portion of the year’s tax for 1363, except as specified in the contract as drawn. At the first interview as testified to by such attorney the agreement was that the defendant should pay all the taxes, and at the second the change was made for the reason before stated. We therefore have no right, in the absence of any statement to that effect by him, to assume that the defendant made the same mistake in regard to the law as the plaintiff’s attorney, and executed the contract in order to accomplish the effect the latter intended. The complaint charges that the agreement omitted wasi that “ the defendant should pay the proportion of the taxes from the lsi of November' until September 1864.” But the plaintiff testifies that the understanding was, that the defendant should pay the taxes from January 1st to September 23, 1863, and that the reason for it was “ that he got the house so cheap,” although she didn’t huno that any thing was said on the subject.
If the law had been as the plaintiff’s attorney supposed it to be, there would have been no necessity to reform the contract in order to compel the defendant to pay the sum adjudged against him. And he certainly does not testify to any express assumption by.the defendant of the proportion of the tax for the time.from January 1 to September 23, 1863. We have then *515 simply the case of tan understanding by the plaintiff, without any thing said to that effect by any one, that the defendant was to pay such proportion and the draft of the contract by her attorney under the belief, inconsistent with such understanding, that it would require the defendant to pay the proportion of such tax for the time between the 1st of January and some nine in September 1864, which he supposed to be embraced in the agreement. I think it plain that the plaintiff understood the taxes /o?:.1863, which was the only thing talked about, to be for that calendar year, while her attorney understood it to be for an imaginary fiscal year extending to September 1864, and that being informed by him that at least five sixths of that tax was to be paid by the defendant, she inferred it must have included the first part of 1863 until.September j and that the only reason why he agreed to pay a tax for a house for a space of time long before he occupied it, was its low price. This' seems difficult to reconcile with the alleged agreement by the plaintiff to pay the proportion of the tax between the 23d of September and the 1st of November, 1863, because she occupied the hoüse during that time as testified to by such attorney.
A mistake of the law by the attorney of one of the partiesor a misapprehension of the agreement by the party whose attorney he was, is not sufficient to justify the reformation of a contract. Even a common mistake,of the law is not enough. (Arthur v. Arthur, 10 Barb. 9.) There is no evidence in this case of any complete and final agreement, except in the contract itself. By that, if the law were as was supposed by the plaintiff's attorney, the defendant would be bound to pay all the taxes paid by the plaintiff, except such part thereof as should be proportioned to the time between the first of November and the time the taxes should be confirmed in 1864. In that case the action would be prematurely brought as regarded the payment of the money, as the proportion could not be determined until the day of confirmation should be ascertained.
I cannot, therefore, find any evidence to" sustain any agreement by the defendant to assume any part of the taxes for 1863, *516 except for the time after the 1st of November of that year ; and I concur in thinking the judgment ought to be reversed and a new trial had, with costs to abide the event. ■